HAROLD JOE BLACK                          CIVIL ACTION NO. 05-cv-2187

VERSUS                                    JUDGE HICKS

WARDEN, ALLEN CORRECTIONAL                MAGISTRATE JUDGE HORNSBY
CENTER

## REPORT AND RECOMMENDATION

### Introduction

A Caddo Parish jury convicted Harold Joe Black ("Petitioner") of one count of distribution of cocaine, arising from a $100 sale to an undercover policeman. Petitioner's sentence was enhanced based on his status as a second-felony offender, and he was sentenced to 15 years in prison. Petitioner filed a direct appeal. State v. Black, 786 So.2d 289 (La.App. 2d Cir. 2001), writ denied, 815 So.2d 831 (La. 2002). Petitioner then filed a post-conviction application, as well as several supplemental submissions at all levels of the state court system.

Petitioner now seeks federal habeas relief. The petition is lengthy, and the size of the state court record in this case is approximately twice that seen in the typical murder prosecution. There have been more than 100 filings in the federal court, all but a few of which were made by Petitioner. Despite the number and length of filings, it is nonetheless difficult to discern from the petition (Doc. 1) the precise issues that are presented for habeas

review. The court has generously construed the submission and will attempt to fairly address the claims presented therein. For the reasons that follow, it is recommended that all relief be denied.

**Relevant Facts**

Caddo Parish Sheriff's Deputies Rick Farris and April Wright were working undercover with a confidential informant (CI) when they developed a plan to visit a house and attempt to purchase drugs from a suspected dealer known as "Boss Hogg."

The two deputies and the CI arrived at the suspected house just before 7:00 p.m. on a January evening. Farris testified that it was dark outside, but there was continuous street lighting in the area. The two deputies and the CI parked in front of the house, and Farris and the CI got out of the car. Deputy Wright (undercover) stayed in the car because a person from whom she had bought drugs before was walking up to the car. Farris said that he and the CI walked up to the house and made contact with Petitioner and another person, both of whom were standing outside the house.

Petitioner asked Farris and the CI to step inside, and they did. There was no electricity in the home, but the occupants were "bootlegging" electricity from a neighboring garage by use of an extension cord. The room where the men met was well lit by a light dropped in the center of the room. Farris and the CI told Petitioner that they wanted to buy $100 worth of crack cocaine.

Petitioner responded that Boss Hogg was not in the house, but Petitioner offered to get the men drugs from down the street. Petitioner asked the two men to wait at the house, and they did wait in the livingroom area with a woman who had been there with Petitioner. Farris estimated that they waited about 20 minutes. Petitioner returned. Farris testified that Petitioner then handed Farris crack cocaine and asked for a piece of it. Farris instead gave Petitioner $5.00 for walking down the street to get the drugs. Farris and the CI then left.

Deputy Farris was wearing an audio transmitter (disguised as a beeper) during the visit to the house, and the sounds picked up were recorded by officers at another location. The recording, which is described as being of poor quality, was played for the jury. Deputy Farris described what was being said and what had been happening at the scene during various points in the visit. The transaction ended with Petitioner asking Farris and the CI to come back, and Farris responded that he would.

Farris did see Petitioner again about two months later, when he identified Petitioner in connection with the execution of an arrest warrant. Farris testified at trial about that identification, and he said that he had seen Petitioner several times before the evening of the purchase. He knew from those experiences that Petitioner, the man who sold him the drugs, answered to Harold Joe Black. Farris also identified Petitioner in the courtroom. Tr. 129-85.

Deputy Wright testified that, as she waited outside the house, she saw Petitioner leave the house and, a few minutes later, return. She said she had seen Petitioner before in the same vicinity, and she knew his name before that evening. She said she remembered the

name because it was unusual that Petitioner was known by his full name of Harold Joe Black. Wright testified that Farris, when he returned to the car, told her that he made a purchase from Harold Joe Black and generally described the transaction. Tr. 186-227. A forensic chemist testified that the material purchased from Petitioner contained cocaine. Tr. 228-32.

Petitioner called several witnesses who had known him for a number of years. Vassie Richardson was a former school teacher and long-time acquaintance. Harold Player was a Bossier Parish sheriff's deputy who had known Petitioner from their years growing up in Plain Dealing and had talked with Petitioner 20 or 30 times over the last three years. Arron Bradford has known Petitioner all his life and grew up with him in Plain Dealing. Phil White and Cedric White are also life-long friends or acquaintances. Each of these witnesses listened to a portion of the surveillance tape in which a voice is heard talking about an "eight ball," which was the term used to describe the one-eighth ounce rock of crack cocaine that Deputy Farris purchased. Each of the witnesses testified that the voice on the tape that discussed an eight ball did not sound like Petitioner. Tr. 234-52.

Curley Black testified that Petitioner is one of her 15 children. Petitioner was living with her in Shreveport when the police came to the home one morning. Petitioner answered the door, and a policeman with his face covered asked if Petitioner was Joe. Petitioner replied that he was Harold Joe Black, and he allowed the officers to come inside and talk to him. Ms. Black testified that she heard the officer asking Petitioner what happened to his beard and commenting that Petitioner had cleaned up. She also testified that the officer

asked Petitioner if he was born in 1948 (Petitioner was born in 1956), and the officer told her

that they had come to see Petitioner because he was allegedly involved in a robbery the prior

evening. Ms. Black said that Petitioner had been home asleep that night, and there is no

indication that Petitioner was charged with a robbery. Ms. Black was not asked to listen to

the surveillance tape or give an opinion regarding whether it was her son's voice talking

about an eight ball. Tr. 261-70.

Another defense witness was Robert Bishop, the CI who was with Deputy Farris at

the time of the buy. He testified that he went with Deputies Farris and Wright that night to

attempt to buy drugs from Boss Hogg. He admitted that Petitioner was present in the house

with an unknown female, and Petitioner left the house to go see Boss Hogg at another house.

Bishop conceded that no drugs changed hands until Petitioner returned, but he said that he

did not see the drugs transferred. Bishop testified that the female was standing near

Deputy Farris and "gave him something" and when they got back to the car Farris had the

drugs. Bishop said he never saw Petitioner give any drugs to Farris. He also testified that

it was his voice on the tape talking about an eight ball. Bishop said he asked the female if

she knew how much an eight ball cost and whether she knew what an eight ball looked like.

Bishop admitted on cross-examination that he had acted as a CI in drug cases 200 or

300 times, and he admitted that it was customary for an agent who was recording a

transaction to, at the end of the transaction, state who he purchased the drugs from. Near the

end of the recording, Deputy Farris asked the name of the man, and Bishop stated Harold Joe

Black.  Bishop said he did not recall that Farris asked him who sold the drugs but only who the male was in the house because Farris "knew that Harold Joe Black didn't have no dope." Bishop admitted that Petitioner gave him a ride to and from court during the trial. Tr. 309-18.

Deputy Farris was called on rebuttal.  He testified that the female did not sell him any drugs, did not hand him anything, and was not involved in the transaction.  Tr. 319-20. Deputy Farris also took the stand on other occasions during the trial, relevant to a potential Brady claim.  Those proceedings will be discussed in more detail below.

**Sufficiency of the Evidence**

Petitioner raises several issues, including the sufficiency of the evidence. The sufficiency of the evidence issue should be reached even if the court were to decide that one of the other issues presented by Petitioner entitles him to a new trial.  That is because if the evidence was insufficient to support the conviction, double jeopardy principles would prohibit a new trial.  See Greene v. Massey, 98 S.Ct. 2151 (1978); Patterson v. Haskins, 470 F.3d 645 (6th Cir. 2006); and U.S. v. Rodriguez, 260 F.3d 416 (5th Cir. 2001).

Petitioner was represented by Attorney Allan Harris at trial.  Attorney J. Ransdell Keene handled the direct appeal.  The appeal raised three principal issues, two of which related to the Brady issues mentioned above.  The other was not a traditional sufficiency of the evidence argument, but that was its substance.  Petitioner stated the issue as whether a conviction should stand if misidentification of the defendant is the primary issue and the

prosecution does not negate any reasonable probability of misidentification. Tr. 376-383, 390-91.

The state appellate court found that the assignment of error urging misidentification was without merit. The court noted that the CI, who testified for the defense, corroborated the testimony of Deputies Farris and Wright that it was Petitioner at the house where the drug deal happened. Under Louisiana law, the court wrote, a defendant is guilty of distribution of cocaine when he transfers possession or control of the cocaine to his intended recipients. He is equally guilty as a principal if he acts as an intermediary who arranges for, or facilitates, the transfer of drugs from the seller to the buyer. The court assessed the elements of the crime against the evidence. Deputy Farris testified squarely that it was Petitioner who handed him the drugs. The defense's best evidence was from the CI, who did not deny that Petitioner left and returned with drugs that ended up with Deputy Farris. The court noted the great deference that is afforded the jury in findings of fact, and that a reasonable jury could have convicted Petitioner of distribution even without relying on Deputy Farris's identification testimony. It upheld the conviction. State v. Black, 786 So.2d at 299-301.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable

inferences from basic facts to ultimate facts." Id. The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

Petitioner can obtain habeas relief on this claim only if the state court's decision was an "unreasonable application" of the Jackson principles. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000); Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001). Under the unreasonable application standard, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the state court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the state court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

Plaintiff's petition and memorandum are lengthy, but Petitioner does not make a focused argument regarding the sufficiency of the evidence. Petitioner has contended throughout his many other arguments that he is not guilty, so the court has construed his

petition as asserting this claim. Petitioner has not shown that the state court's decision that the jury had sufficient evidence to render a guilty verdict was an objectively unreasonable application of Strickland. The state court fully reviewed the evidence, quoting at length from the testimony, and reached a reasoned decision that the evidence supported the guilty verdict. The undersigned has reviewed the trial evidence and found that decision to be quite reasonable. Habeas relief is not permitted on this claim.

**CI and Duress**

Petitioner filed affidavits from CI Robert Bishop as part of his post-conviction applications. Bishop testified in one affidavit that on the night of the buy he and Petitioner were "in another part of the house" and Petitioner "didn't have anything to do with the actual drug transaction" and was not in the room where the drug deal went down. In the other affidavit, Bishop testifies that he was approached by a bailiff during the trial, and the bailiff said Assistant District Attorney Donna Hall wanted to speak to Bishop. Hall asked what happened, and Bishop, per his testimony, told her that Petitioner "really did not buy the dope, the girl brought the dope, and all that Harold Joe did was go to look for Boss Hogg." Bishop said he told Hall that he did not know if he was supposed to talk to her, but Hall said that she could ask him questions. Bishop adds that he told Hall that he had no way home after court, as he had ridden to court with Petitioner. Hall, according to Bishop's testimony, told Petitioner that he could go on home, and Hall would make sure that Bishop got home after they finished talking. Bishop testifies that Hall asked if he would be willing to say that

Petitioner had something to do with the transaction, but Bishop said no, and he then left with Petitioner and Petitioner's mother. Tr. 2832-34.

Petitioner, in his memorandum to this court, depicts all of Bishop's unfavorable trial testimony as perjury that was made under duress. Petitioner apparently overlooks the fact that Bishop was a defense witness that Petitioner put on the stand. There was also trial testimony before the jury regarding the alleged duress issue. Bishop told the jury that prosecutor Hall talked to him outside the courtroom and wanted to know what Bishop knew about the case. Bishop said that Hall also stated that if Bishop would sit and talk to her about what happened, she would make sure he got home that afternoon. Bishop said he told Hall he needed to go home. Hall said that they could talk the next morning, but they never did. Tr. 318.

Assuming this issue was exhausted before the state courts, it has no merit. Prosecutors are allowed to talk to witnesses. There is no hint that the prosecutor did anything improper in an effort to influence Bishop's testimony. There is no evidence of any plea bargain or other favor for Bishop. Furthermore, Bishop offered testimony favorable to the defense except for placing Petitioner at the scene and Bishop's evasive responses to some questions, which cast suspicion on his credibility. Petitioner is not entitled to have his state conviction vacated based on this claim.

**Withdrawal of Counsel**

Petitioner retained Attorney William D. Hall to represent him in connection with a post-conviction application. Hall filed a motion to withdraw on grounds including Petitioner's insistence upon including issues that were not supported by law, Petitioner had filed pro se submissions that unduly complicated the case, and Petitioner had generally been unreasonably difficult as a client. Hall refunded a substantial portion of his fee despite a representation that he worked enough hours to justify an even greater fee. The trial court judge granted the motion to withdraw, and he allowed Petitioner 90 days to find new counsel. Tr. 618-22.

Petitioner argues that the state court was wrong to allow his retained counsel to withdraw. A state prisoner has no constitutional right to an attorney in state post-conviction proceedings. Matchett v. Dretke, 380 F.3d 844, 849 (5th Cir. 2004), citing Coleman v. Thompson, 111 S.Ct. 2546 (1991). Petitioner cites no law that would require the state court to insist that retained counsel stay on the case.

Federal habeas relief is available only if the state court's adjudication of an issue resulted in a decision that is contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). Petitioner has not identified any clearly established federal law that was violated by the state court's action. Petitioner is not entitled to have his conviction vacated based on this claim.

**Illegal Arrest**

Deputy April Wright prepared an affidavit for an arrest warrant. Her affidavit set out the facts that Deputy Farris made a $100 purchase of cocaine from Petitioner at a certain address in Shreveport. The typed warrant application (Tr. 39) includes a handwritten statement that, "Affiant witnessed the above transaction." Deputy Wright testified at a suppression hearing that the judge reviewed the affidavit and inserted that handwriting. Wright admitted that she initialed the statement, although she did not visually observe the transaction inside the house. Wright testified, as she did at trial, that she sat outside the house and listened to the audio transmission of the buy. Tr. 372-013--025. The trial court judge ruled that there was probable cause for Farris to arrest Petitioner even without a warrant, and the inclusion of the handwritten language in the warrant "that might not have been sufficiently worded does not invalidate the arrest of the defendant or any identification of the defendant." The motion to suppress was denied. Tr. 372-056.

Petitioner's claim of an unlawful arrest does not appear to be supported by the facts or law, and it is not a valid basis for habeas relief. The Supreme Court stated in <u>Gerstein v. Pugh</u>, 95 S.Ct. 854 (1975) that there is an "established rule that illegal arrest or detention does not void a subsequent conviction." <u>See also</u> <u>Montoya v. Scott</u>, 65 F.3d 405, 421 (5th Cir. 1995). The claim is also barred by the doctrine of <u>Stone v. Powell</u>, 96 S.Ct. 3037 (1976), which states that a federal court may not grant habeas relief based on a Fourth Amendment violation where the state has provided an opportunity for full and fair litigation of the issue.

See <u>Lucas v. Johnson</u>, 132 F.3d 1069, 1083 (5th Cir. 1998) (claim of lack of probable cause to support arrest did not state a habeas claim; barred by <u>Stone</u>)

To satisfy the opportunity for the full and fair litigation requirement, the state need only provide the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim. And <u>Stone</u> bars habeas consideration of the claim whether or not the defendant employs those available processes. <u>Janecka v. Cockrell</u>, 301 F.3d 316, 320 (5th Cir. 2002). Louisiana provided Petitioner the opportunity (which he took) to litigate the issue at a hearing on a motion to suppress. There is no basis for relief with respect to this claim.

**State Post-Conviction Proceedings**

Petitioner filed a host of post-conviction filings in the state court, including a number of supplemental and additional filings. He argues in his federal habeas submission that the state courts were wrong to apply a bar against repetitive applications, ruled too early or did not rule at all on certain filings, and otherwise ran afoul of various aspects of Louisiana post-conviction procedural law.

The federal court does not review errors of state law on habeas review. It is only errors of constitutional magnitude for which habeas relief is available. Thus, it is well established that "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." <u>Rudd v. Johnson</u>, 256 F.3d 317, 319 (5th Cir. 2001). An attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the issue in federal habeas. <u>Id</u>. at 320. <u>See also</u> <u>Drevino v. Johnson</u>,

168 F.3d 173, 180 (5th Cir. 1999). Petitioner is not entitled to relief with respect to these several claims.

**Right to Confront Accusers**

Petitioner has included scattered arguments that he was not allowed to question two officers who monitored and recorded the audio transmission of the drug sale from a distant vehicle. Deputy Farris testified that Agents Townley and Joe monitored the transmission from a safe distance. Farris testified that he and Deputy Wright were the only two black narcotic agents on their force. Townley and Joe were white, and they could not chance getting too close to the predominantly black neighborhood and alerting the suspects to the presence of police. The distance they had to keep contributed to the poor quality of the recording of the surveillance audio. Tr. 147-48.

Agents Townley and Joe did not testify at trial, and there was no testimony that either of them said anything regarding the case. Farris merely described their role in monitoring and recording the audio. Petitioner has not articulated a basis on which his right to confront his accusers was violated.

Petitioner has also made reference in his memorandum to the Louisiana Electronics Surveillance Act, La.R.S. 15:1308, et. seq. He argues that Farris, Wright, Townley, and Joe did not obtain proper authorization to intercept the conversation between Farris and Petitioner. Assuming the statutes applied to the recording, violation of state laws does not give rise to grounds for federal habeas relief. Petitioner makes a related argument that his

counsel were ineffective for not raising the Act as an objection to the admission of the recording. Petitioner does not point to any authority for suppression of evidence in similar circumstances, and Section 1303(C)(3) provides that it is not unlawful under the Act for a person acting under color of law to intercept a communication where the person is a party to the communication or one of the parties to the communication has given prior consent to such interception. Deputy Farris was a party to the communication, and he obviously consented to the interception when he agreed to wear the audio transmission device, so an argument under the Act would have been meritless. Counsel are not ineffective for failing to assert meritless arguments. Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994).

**Ineffective Assistance; Voir Dire**

Appellate counsel did not raise any issues regarding the jury selection process, so it was not transcribed by the court reporter. Petitioner later made a claim, during the post-conviction proceedings, that juror Jeffrey Williams, a firefighter, made a statement during voir dire, "All my friends are police officers." There is no transcript of that proceeding, so the veracity of this claim cannot be verified. Petitioner has claimed that counsel was ineffective for not challenging Williams as a juror. He has made a related (and somewhat inconsistent) claim that the trial court erred in denying counsel's challenge to Mr. Williams.

The state court minutes show that Petitioner was present with his counsel during the impaneling of the jury and alternate jurors. At the end of the selection, defense counsel made an oral motion to use a "strike back" peremptory challenge and dismiss seated juror Jeffrey

Williams. The minutes state that the motion was argued, submitted, and denied. Tr. 4. No further details are provided in the minutes.

Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective assistance of counsel. Counsel's performance was deficient only if he made errors so serious that, when reviewed under an objective standard of reasonable professional assistance and afforded a presumption of competency, he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. 104 S.Ct. at 2068.

The test for habeas purposes is not whether a petitioner made the showing required under Strickland. The test is whether the state court's decision – that the petitioner did not make the Strickland showing – was contrary to, or an unreasonable application of, the standards provided by Strickland's clearly established federal law. Williams v. Taylor, 120 S.Ct. 1495 (2000); Henderson v. Quarterman, 460 F.3d 654, 665 (5th Cir. 2006).

Jury selection is among the areas where counsel's strategy must be afforded the most deference, and hindsight must be avoided. The record that is available suggests that counsel, at some point in the proceedings, had a concern about juror Williams and attempted to have him excused by peremptory challenge. The attempt was not successful, but there is no factual basis to conclude that counsel was not functioning as the counsel guaranteed by the

Sixth Amendment when he did not immediately exercise a peremptory challenge to Williams earlier in the case. Based on the available record, there is no basis for this court to find that the state court was objectively unreasonable when it determined that defense counsel did not violate the <u>Strickland</u> principles during voir dire.

Petitioner has made a related claim that the trial court violated his rights when it did not grant counsel's request for a strike back challenge. This court may not grant habeas relief on a claim that the state judge violated any state court procedures governing the timing of the exercise of peremptory challenges.

To the extent that Petitioner urges that the trial judge should have excused juror Williams for cause, the issue also lacks merit. The standard for determining when a venire member may be excluded for cause is whether the prospective "juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." <u>Wainwright v. Witt</u>, 105 S.Ct. 844, 852 (1985) (internal quotation marks and footnote omitted). A state trial court's refusal of a petitioner's challenge for cause is a factual finding entitled to a presumption of correctness. <u>Soria v. Johnson</u>, 207 F.3d 232, 245 (5th Cir. 2000); <u>Jones v. Butler</u>, 864 F.2d 348, 362 (5th Cir.1988). This court should not vacate the underlying conviction on the grounds that the trial court did not *sua sponte* excuse juror Williams for cause merely because he said that his friends were policemen.

**Habitual Offender Claims**

The prosecutor made an offer to withdraw the multiple offender enhancement if Petitioner would accept an eight-year sentence. Petitioner rejected the offer on the record, and the judge imposed the minimum 15-year sentence for a second-felony offender. Tr. 354-71.

Petitioner makes a number of complaints about the validity of his habitual offender adjudication. Petitioner's attacks on the prior conviction that was used to enhance his current sentence are foreclosed by <u>Lackawanna County District Attorney v. Coss</u>, 121 S.Ct. 1567 (2001). That decision holds that habeas relief is unavailable to a state prisoner when the prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the prisoner is no longer in custody. There is an exception if counsel was not appointed in connection with a prior conviction. Petitioner has not asserted that he lacked counsel in the prior case.

Petitioner also makes arguments about his counsel's performance in the multiple offender proceedings. Petitioner argues that counsel was ineffective for not making cleansing period and Ex Post Facto Clause arguments that would preclude the 1984 conviction from being used to enhance the most recent sentence. When Petitioner was convicted of the 1984 crime, there was a three-year "cleansing period" after which a first conviction could not be used for enhancement purposes. The legislature later extended that period to 10 years. The sentencing judge gave a detailed discussion of the relevant dates and changes in the law, and

he determined that Petitioner was arrested for the most recent charge several months before the expiration of the 10-year cleansing period. Tr. 356-58. Petitioner stated, "I even calculated it myself that I didn't make it through the 10-year cleansing period." Tr. 363. Petitioner has not demonstrated that the trial court made any error in its calculation of the cleansing period, so counsel could not be ineffective for not challenging the enhancement on that basis.

Counsel was not ineffective for not pursuing an Ex Post Facto Clause argument. It would lack merit. Federal courts have routinely rejected similar arguments regarding legislative extensions of the cleansing period. See, e.g., Johnson v. Cain, 206 Fed. Appx. 372 (5th Cir. 2006); Williams v. Cain, 2008 WL 3363562 (E.D. La. 2008); Dillon v. Cain, 2007 WL 1573809 (E.D. La. 2007); and Gordon v. Cain, 2006 WL 3469564 (E.D. La. 2006). Petitioner is not entitled to habeas relief with respect to these claims.

**Ineffective Assistance; Speedy Trial**

Petitioner was arrested in March 1998, and his trial commenced in March 2000. He argued in a post-conviction application that his conviction was obtained in violation of the Sixth Amendment because counsel effectively failed to argue for a speedy trial. Tr. 476-82. The delay in this case was not extraordinary, and much of it is attributable to Petitioner changing lawyers and the need for time to litigate defense motions. The history of those various proceedings is set forth in the state's brief at pages 13-15. Petitioner did file a pro se motion for speedy trial within several weeks of his arrest, but counsel were not

automatically obligated to press the motion. Assuming counsel's performance were deficient, Petitioner would still have to show prejudice. Petitioner argues that a police report was lost during the delay and that the female inside the house at the time of the sale strangely vanished. Petitioner contends that the female, Sandra Johnson, would have testified that she was the person who actually sold the drugs to Deputy Farris. Petitioner has not, however, submitted any affidavit from Johnson or other evidence that she would have been willing to incriminate herself in court to provide Petitioner a defense.

The record reflects that Petitioner was brought to trial within a reasonable time for a felony charge in Caddo Parish. Petitioner was out on bond for much of that time, and some of the time was spent on hearings for matters such as the motion to suppress. The arguments for prejudice are not supported by evidence in the state court record or other particular evidence. There is no basis to find that the state court made an objectively unreasonable application of <u>Strickland</u> when it rejected the claim that counsel was ineffective for not arguing for a speedy trial. Given the complications in the record and the busy trial docket in Caddo Parish, it is unlikely that the trial could have been commenced any sooner, even if counsel had made those arguments.

**Ineffective Assistance; Jury Instruction**

Petitioner's federal petition includes a general assertion that counsel was somehow ineffective for not objecting to the trial court's instruction regarding the law of principals. The state court noted that Petitioner first presented this argument in a "voluminous and nearly

incomprehensible document" that was a supplement to his original lengthy post-conviction application. Tr. 1181-A. The court noted that the claim was phrased in terms of an argument regarding the jury charge on the law of principals, but the argument was more that there was not sufficient evidence to convict Petitioner as a principal. The trial court deferred to the prior appellate ruling that the evidence was sufficient. Tr. 1181-C. Assuming the <u>Strickland</u> claim was properly exhausted, it lacks merit for the reasons that follow.

At trial, the judge gave counsel a copy of proposed jury instructions and advised that the court planned to add a jury charge on the law of principals. He stated, "What I will probably do is just copy Section 24 of Title 14." That provision sets forth Louisiana law on the responsibility of principals to a crime. The prosecutor argued for a more expansive charge than the rather simple and basic charge suggested by the court, but the objection was overruled. Defense counsel noted that the prosecutor was asking to expound upon the legal definition, and the court said that it did not want to expound or emphasize the law of principals. The instructions would simply state what the law is without further elaboration. Tr. 324-27. The actual instructions given were in accord with Section 24, stating that all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. Tr. 73.

Petitioner has not made any viable argument that the jury charge was improper under the circumstances. Counsel cannot be faulted for failing to raise an objection or argument

that has yet to be voiced.  The state court's denial of any relief with regard to this claim was not an objectively unreasonable application of <u>Strickland</u>, so habeas relief is not permitted.

**<u>Brady</u> Claim; Transcript and Recorder**

Petitioner has argued that the state violated his rights under <u>Brady v. Maryland</u>, 83 S.Ct. 1194 (1963) because it did not provide him a transcript of the recorded drug buy prior to trial.  A copy of the audio tape was given to defense counsel during discovery, and the tape was played at trial by both the prosecution and the defense in an effort to bolster their cases. Defense counsel could have prepared a transcript if he wished, but <u>Brady</u> does not require that every audio recording be transcribed and produced on paper to the defense before trial.

Petitioner hired an expert during his post-conviction proceedings, and the expert wanted to examine the recording device that produced the tape.  At some time after trial, however, the recording device had been destroyed.  Petitioner attempts to make this a <u>Brady</u> claim as well, but there is no showing that the evidence would have been exculpatory, there is no showing of bad faith in the destruction of the equipment, and the destruction did not happen until after the trial was completed.  Petitioner has not shown that he is entitled to habeas relief with respect to these claims.

**<u>Brady</u>; Deputy Farris**

The trial began on a Wednesday, and the prosecution presented its entire case, including the testimony of Deputy Farris, on that day.  On Thursday, defense counsel began the day by advising the court that at about 2:00 o'clock on Wednesday afternoon he was

given a note by Michael Carmody, a local attorney, who asked if the Agent Farris who was testifying was the same Agent Farris who had (allegedly) filed a false affidavit in a case involving defense attorney Michelle Andrepont. Defense counsel reported that he had talked to Ms. Andrepont that morning and that she said that a couple of years earlier, when she was in private practice, she had a case where Farris signed a false arrest affidavit alleging that a particular person had sold drugs to him, but it turned out the accused person was in jail at the time. Ms. Andrepont, according to defense counsel, had contacted the prosecutor on that case, Mike Powell, and established that her client had been in jail at the time of the alleged sale. Powell dismissed the prosecution. Ms. Andrepont could not remember the name of her client, but she was reported to be looking through her files.

Defense counsel moved for a mistrial "because of failure of the State to provide what is clearly Brady and Kyles information," and he asked for a hearing to permit Powell and Andrepont to testify about the issue. Ms. Hall, the prosecutor, responded that she had become aware of the situation only a few minutes before court commenced that day. The trial judge stated that he believed the defense had stated sufficient grounds to permit additional cross-examination of Farris on the issue, but he found that there was no showing (as yet) that the State had in its possession any Brady material that should have been presented in the case. He added that if it were established that the State did not divulge Brady material, a mistrial might be in order. The trial judge permitted a short break so that

Agent Farris could be summoned back to court, and the trial then recommenced with the presentation of defense witnesses. Tr. 257-61.

Deputy Farris returned to court that morning and took the stand for additional cross-examination by defense counsel. Farris was asked whether, in the past two years or so, he had filed an affidavit for an arrest warrant that accused a person of selling drugs, but it was later learned that the person was in jail on the date of the alleged drug sale. Farris replied that there was "an arrest that was made on a mistaken identity," but he could not recall the name of the person or the date of the event. He explained that the actual name of a person was not on the arrest warrant. Rather, the warrant was for an A/K/A (also known as) or FNUN/LNUN (first name unknown/last name unknown), and Farris was adamant that a narcotics sale had been made to him. The mistake was with regard to the person who was picked up under the impression that he was the unknown described in the warrant. Farris said that once he determined that the arrested person was not the person who was the target of the warrant, he called the jail and told them to release the person immediately. Tr. 270-75.

Farris admitted on redirect that the mistake in identity was his. The suspect told Farris at the time of his arrest that he had been jail on the day of the alleged drug sale. Farris said that he told the suspect he would take him to jail and then gather some information. Farris said that he made several phone calls, ascertained that the suspect had been in jail at the time of the buy, and called the jail to ask that they release the suspect. He did not recall how much time passed during these events. Tr. 276-77.

Defense counsel resumed questioning Farris and asked if it was true that Farris got the suspect out of jail alone, without the involvement of the person's defense lawyer or a prosecutor. Farris testified that he did not recall having a conversation with a prosecutor about that suspect. Defense counsel then renewed his motion for a mistrial, and the jury was excused. Tr. 279-80.

Defense counsel argued for a mistrial on the grounds that the State did not provide notice to the defense that Farris had in the past made either a mistaken identification or filed a false affidavit. He asked that the court order the prosecution to produce the affidavit, find the file, and determine exactly what happened in that case. He also asked that prosecutor Mike Powell be called to testify regarding remarks he made to the court during a bench conference earlier that morning (off the record) about his role in securing the suspect's release. The court stated that its recollection of what Powell said was that the charges were dropped, which is somewhat different than releasing someone from jail. Powell was not pressed for the specifics on that issue, as the court did not realize that the fine distinction was so important at the time of the conversation. Defense counsel argued that any prejudice was not alleviated by being permitted to question Farris at trial. He argued that if the information about the prior misidentification been produced before trial, he could have investigated the matter, reviewed the file of the earlier case, talked to witnesses, and been prepared to more fully and effectively cross-examine Farris. Tr. 281-85.

The trial court recessed, conducted research, and discussed the matter in chambers with counsel.  When the proceedings began again on the record, defense counsel produced an affidavit from Attorney Andrepont that the court accepted in lieu of live testimony. (The affidavit was not read on the transcript.)  Prosecutor Powell came to the courtroom and, by agreement, made a statement on the record in lieu of formal questioning and answering. Powell stated to the court that he recalled handling a case involving Deputy Farris and Attorney Andrepont.  He was not certain, but he believed that the matter was set for a preliminary examination when Andrepont told him that the suspect had been incarcerated at the time of the alleged sale.  Powell recalled that he then told Farris of this, and Farris called the jail where the suspect was said to have been held.  Farris learned that he had made a mistake and so advised Powell, who then dismissed the charges.  Powell said that he had no more distinct recollection, including even the name of the defendant.  Tr. 286-87.

The trial judge found that the information about Farris's past mistake was <u>Brady</u> material and that the question was whether to remedy it by mistrial or recess.  The State objected and asked for time to file an emergency writ application to the appellate court.  The trial was recessed early Thursday afternoon so that the State could prepare a writ application. Tr. 288-92. The appellate court denied the State's emergency writ application.  It held that the trial court's order that the State produce evidence in its possession related to the misidentification and resulting arrest was within the discretion of the trial court.

The trial reconvened on Monday. The trial judge stated that, over the weekend, defense counsel had not received any information from Ms. Andrepont about the case. The State had located the file that they believed was from the case of misidentification by Farris. The judge, at the request of the prosecution, reviewed the prosecutor's entire file and determined that there was not an arrest affidavit in that case. There was an affidavit for a search warrant, and the search warrant had issued. In the course of executing the search warrant, Deputy Farris identified a person as a person whom he alleged distributed drugs to him. That person was arrested, and Farris wrote a report of the arrest. There was no indication in the prosecutor's record of any misidentification. The arrested person pleaded guilty to a misdemeanor, and a felony charge was dismissed. The court ordered the prosecutor to turn over to the defense a copy of Farris's arrest report in that case. The motion for mistrial was denied. The court ordered a recess to allow defense counsel time to review the material.

Defense counsel reported that he went to the clerk's office to pull the file on Delmar Burks, the defendant in the prior case, but the clerk would not allow him to take the record. The court arranged for the production of the records to counsel. Counsel reviewed the records and said he wished to cross-examine Farris further, but urged that he needed much more time to thoroughly investigate all aspects of the prior case. The court ruled that it would not recess the trial any further, so defense counsel stated he would called Farris back to the stand. Tr. 296-308. Instead, counsel called the CI, Robert Bishop, as his next witness.

The defense then rested, and the State called Deputy Farris as a rebuttal witness. The topic of the rebuttal testimony did not include the misidentification. Tr. 319-21. Defense counsel did revisit the issue during closing arguments, and he attempted to use the prior mistake to cast doubt on Farris's testimony. Tr. 338-40.

Petitioner raised this issue on direct appeal. The state appellate court noted the relevant authorities of <u>Brady</u> and <u>Kyles v. Whitley</u>, 115 S.Ct. 1555 (1995) and reviewed at length the relevant trial court proceedings. <u>State v. Black</u>, 786 So.2d at 294-96. The court, noting Louisiana authority that has recognized that a failed identification may constitute <u>Brady</u> material, said that it would not question the trial court's decision that the information the judge ordered produced was <u>Brady</u> material. <u>Id</u>. at 296-97. The appellate court then held that the trial court had properly determined that the material about the earlier case was discoverable and relevant, and that the trial judge had properly denied a defense request for other files from the prosecutor's office. (The defense had asked for all cases in which Farris was the sole witness and charges had been dismissed.) The appellate court next noted the wide discretion a trial judge has in fashioning a remedy for such an issue. The trial judge had allowed the gathering of information from the prosecutor and defense counsel in the earlier case, the recall of Deputy Farris for additional cross-examination, a recess of a long weekend to allow time to look for additional evidence, ordered the production of a portion of the prosecutor's file from the prior case, arranged for counsel to have access to court files from the prior case, and afforded the defense yet another opportunity to question Deputy Farris.

The appellate court found those steps to be sufficient. It also proceeded to find that the evidence showed that Petitioner was guilty as a principal even if, as defense witness Bishop described the events, Petitioner merely transported the drugs from Boss Hogg to the house, and the female in the house actually handed the drugs to Farris. State v. Black, 786 So.2d at 298-301.

The evidence that Deputy Farris made a mistake in an earlier case is not exculpatory of Petitioner, but it could serve as impeachment evidence. Such impeachment evidence may be within the scope of Brady. U.S. v. Bagley, 105 S.Ct. 3375 (1985). There is no indication that the prosecutor in this case had any personal knowledge of the prior case until defense counsel raised the issue in mid-trial. A Brady suppression or withholding nonetheless occurs when the Government does not turn over evidence, even if that evidence is known only to police investigators and not to the prosecutor. Kyles, 115 S.Ct. at 1568.

To prevail on a Brady claim, the evidence at issue must be favorable to the accused (either because it is exculpatory or because it is impeaching), that evidence must have been suppressed by the State (either willfully or inadvertently), and prejudice must have ensued. Strickler v. Greene, 119 S.Ct. 1936, 1948 (1999). This court will assume, as did the state appellate court, that the information about the prior mistake by Farris was favorable; there is no real debate that the information could be used for impeachment.

The next issue is whether the information was withheld or suppressed by the State, either willfully or inadvertently. The Supreme Court has never expressly held that evidence

that is turned over to the defense *during* trial has been suppressed within the meaning of Brady, and the Fifth Circuit has held that such evidence is *not* considered to have been suppressed. Powell v. Quarterman, 536 F.3d 325, 335 (5th Cir. 2008). If the claim is for untimely disclosure of Brady material, the Fifth Circuit looks to whether the defendant was prejudiced by the tardy disclosure. The defendant is not prejudiced if the evidence is received in time for its effective use at trial. Id.

The state court implicitly rejected the claim that defense counsel did not receive the information in time to make effective use of it. It noted in its ruling the delays that allowed counsel to investigate the prior case and further examine Deputy Farris about the issue. Counsel argued for a mistrial on the grounds that he might further investigate the issue and gain information that would permit an even more effective cross-examination of Farris. It has been several years since the trial, and Petitioner has left no stone unturned in attacking his conviction, but he has not presented in his petition to this court any information that might have been learned by further investigation that would have permitted counsel to more effectively cross-examine Farris. The undersigned finds that the state court was not objectively unreasonable in its application of clearly established federal law, as established by the Supreme Court, when it implicitly rejected this element. See U.S. v. Walters, 351 F.3d 159, 169 (5th Cir. 2003) (collecting several Fifth Circuit decisions that denied Brady claims when material was produced during the trial.)

The failure of the suppression element is sufficient, alone, to deny habeas relief on this claim. The court will nonetheless discuss the final element of a <u>Brady</u> claim, prejudice (or materiality). The question is whether in the absence of the suppressed material the defendant received a fair trial, which is a trial that resulted in a verdict worthy of confidence. <u>Moore v. Quarterman</u>, 534 F.3d 454, 461 (5th Cir. 2008). The court should ask whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. As stated another way, the petitioner must show a reasonable probability of a different result. <u>Id</u>., citing <u>Kyles</u>.

The prejudice issue goes hand in hand with the suppression element. The information was produced to the defense and used to cross-examine Farris at trial. We know that Petitioner was nonetheless convicted, and the many years of litigation have yet to uncover any additional information stemming from the disclosure about the prior case that would so strengthen the existing cross-examination that there is a reasonable probability that the jury would have acquitted Petitioner. Furthermore, Farris may have made a mistake in identifying a person in a past case, but Petitioner's own witness testified that it was indeed Petitioner inside the house at the time of the transaction, just as Farris said it was. The state court's decision of this issue was not an objectively unreasonable application of clearly established federal law, so habeas relief is not permitted.

**Other Issues**

Petitioner has made several repeated filings to seek testing of the audio tape, a transcript of the voir dire, his immediate release from prison, and other forms of relief. The court discussed the voir dire argument above, and Petitioner's other arguments go to the sufficiency of the evidence or are attempts to reopen the trial proceedings for a second bite at the apple. The federal court has a limited role on habeas review, and what Petitioner seeks is not within the confines of that role. The court has conducted a good-faith analysis of the claims reasonably presented by Petitioner in his federal petition and found that they do not justify setting aside the state court conviction and sentence.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**, and that Petitioner's complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>See</u> <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of March, 2009.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE
